468 So.2d 1176 (1985)
Robert CAHN
v.
Dorothea Schlesinger CAHN and Marjorie Cahn Friedman.
No. 84-C-2115.
Supreme Court of Louisiana.
May 14, 1985.
Rehearing Denied June 13, 1985.
*1178 William Rosen, Levy, Marx, Lucas & Rosen, New Orleans, for defendant-applicant.
Max Nathan, Jr., Isaac Gregorie, Jr., Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiff-respondent.
DIXON, Chief Justice.
Plaintiff, Robert Cahn, instituted this action to partition immovable property by licitation. Robert Cahn has the perfect ownership of an undivided one-fourth interest in immovable property, and he is the naked owner of an additional one-fourth interest. Defendant, Dorothea Schlesinger Cahn, the beneficiary of a usufruct which exists over one-half of the property, filed an exception of no cause of action. The trial court sustained the exception, finding that partition by licitation was barred by C.C. 543. The court of appeal reversed, overruling the exception. Cahn v. Cahn, 459 So.2d 731 (La.App.1984). We now reverse the court of appeal judgment and reinstate the judgment of the trial court.
The property at issue in this case consists of a house situated on the two lots described below[1] located at 40 Versailles Boulevard in New Orleans.
The house was acquired during the community of Moise Cahn and his first wife, Gladys Cahn. Two children were born of that marriage, Robert Cahn and Marjorie Cahn Friedman. Gladys Cahn died and Moise Cahn became the usufructuary of Gladys' one-half interest in 40 Versailles Boulevard by virtue of a testamentary usufruct. Robert Cahn and Marjorie Cahn Friedman became the naked owners of their mother's one-half interest in the property.
Moise Cahn subsequently married Dorothea Schlesinger Cahn. No children were born of that marriage. In 1978, after thirteen years of marriage, Moise Cahn died, leaving a testamentary usufruct to Dorothea Schlesinger Cahn. It was Moise Cahn's clear intention to leave Dorothea a usufruct over the home at Versailles Boulevard; however, Moise only owned one-half of the property. His usufruct over the other one-half interest terminated upon his *1179 death. Upon Moise Cahn's death, his children, Robert Cahn and Marjorie Cahn Friedman, became owners of the one-half interest originally owned by their mother, Gladys Cahn, and acquired the naked ownership of the one-half interest left by Moise Cahn.
Dorothea Cahn, now seventy-nine years of age, has occupied the premises at 40 Versailles Boulevard since Moise Cahn's death. She has been solely responsible for maintaining the premises since that time. She has paid all taxes levied on the premises and she has also paid for numerous repairs and improvements.
On July 26, 1982 Robert Cahn filed suit to obtain a partition by licitation of the property. As defendants, he named his stepmother, Dorothea Cahn and his sister, Marjorie Cahn Friedman. In his original and supplemental petitions Robert Cahn alleged that as the perfect owner of an undivided share of the property, he was entitled to obtain a partition by licitation. All parties agree that a partition in kind is not possible.
Dorothea Cahn filed an exception of no cause of action, contending that C.C. 543 prohibits partition by licitation where a usufruct exists over any part of the property. The exception was based on our interpretation of C.C. 543 in Pasternack v. Samuels, 415 So.2d 211 (La.1982).
In response to the exception, Robert Cahn amended his petition to allege that the 1983 amendment of C.C. 543 overruled Pasternack. In the alternative he prayed for rent, possession or a declaration of his rights.
On October 21, 1983 a hearing on the exception was held before the district court. On February 2, 1984 judgment was rendered sustaining the exception of no cause of action. In its reasons for judgment the court concluded that the 1983 amendment of C.C. 543 could not be applied retrospectively and therefore partition by licitation was prohibited by the original version of 543 as interpreted in Pasternack. The court also declined to render a declaratory judgment, finding that plaintiff prayed for declaratory relief solely for the purpose of circumventing C.C. 543.
Plaintiff appealed and the court of appeal reversed, overruling defendant's exception. The court applied the original version of C.C. 543, but nevertheless found that partition by licitation was not prohibited since Pasternack was factually distinguishable.
Defendant, Dorothea Schlesinger Cahn, now seeks reinstatement of the trial court judgment sustaining the exception of no cause of action. Plaintiff, Robert Cahn, prays for affirmance of the court of appeal judgment. In the alternative, he seeks rent, possession of the premises or a declaration of rights. Robert's sister, Marjorie Cahn Friedman, though a nominal defendant, has not taken part in these proceedings.

ISSUES
I. Whether the 1983 revision of C.C. 543 was curative, remedial, or procedural in nature, such as to render it applicable to cases arising before the effective date of the revision?
II. Whether C.C. 543 prohibits the owner of an undivided one-quarter ownership interest from obtaining a partition by licitation where a testamentary usufruct exists over an undivided one-half interest in the property?
III. Whether the owner of an undivided one-quarter ownership interest is entitled to possession of the premises or rent from the usufructuary for her use of his undivided share of the premises?
The basic right of co-owners to demand partition is firmly established in the civil law of this state. Civil Code article 1289 lays down the general rule:
"No one can be compelled to hold property with another, unless the contrary has been agreed upon; any one has a right to demand the division of a thing held in common, by the action of partition."
This basic right is reiterated in other articles of the code. Cf. C.C. 1307, 1308, 1309, 1312, 1313, 1315, 1320, 1321.
*1180 Although the right of partition is broad, it is not without limitation. See for example C.C. 1303 and 2336. Article 543 is one such limitation on the right to partition. The following version of 543 was enacted as part of the 1976 revision of the property articles in the Civil Code:
"A coowner whether or not he is also a usufructuary of an undivided part of a thing may demand its partition in kind to the extent necessary to enable him to obtain the perfect ownership of a determined part. Partition by licitation is not allowed even though there is a person who is both a usufructuary and an owner." (Emphasis added).
The official reporter's comments to that provision indicate that the second sentence was intended to codify established jurisprudence.[2]
We interpreted the prohibition established by C.C. 543 in Pasternack v. Samuels, supra. In that case, Pasternack sued for a partition by licitation against his sister, Betty Claire Pasternack Samuels, individually and as co-administrator of their mother's estate. The property consisted of seventy parcels of land. With the exception of two of the parcels, the property was owned in undivided shares by Pasternack, a trust for his son, Mrs. Samuels and a trust for her children. The interest held in trust for the Samuels children was subject to a usufruct in favor of Mrs. Samuels. She opposed the partition, claiming that C.C. 543 prohibited a partition by licitation where a usufruct existed over any part of the property.
In affirming the court of appeal judgment in Mrs. Samuels' favor, we held:
"Although art. 543 allows a full owner to partition in kind subject to a usufruct, by its clear wording, `partition by licitation is not allowed.' It is evident from the language of the article that the prohibition refers to property subject to usufruct and applies to the full owner as well. Hence, the court of appeal correctly found that Mr. Pasternack, as full owner of an undivided interest in the property, subject to the usufruct of Mrs. Samuels, was prohibited by art. 543 from partitioning the property by licitation...." Pasternack v. Samuels, supra at 213-14.
The present suit was instituted shortly after our decision in Pasternack v. Samuels, supra. During the pendency of this action, C.C. 543 was amended in an attempt to legislatively overrule Pasternack.[3] The present version of C.C. 543, which was passed during the 1983 session of the legislature, provides:
"When property is held in indivision, a person having a share in full ownership may demand partition of the property in kind or by licitation, even though there may be other shares in naked ownership and usufruct.
A person having a share in naked ownership only or in usufruct only does not have this right, unless a naked owner of an undivided share and a usufructuary of that share jointly demand partition in kind or by licitation, in which event their combined shares shall be deemed to constitute a share in full ownership."
The official comments which accompanied the new version of C.C. 543 indicate that the purpose of the amendment was:
"... to change the law governing partition of property held in indivision, in full ownership, in usufruct, and in naked ownership, ..."[4]
RETROACTIVITY OF 1983 AMENDMENT TO CIVIL CODE ARTICLE 543
Defendant acquired her rights in 40 Versailles Boulevard at the moment of *1181 Moise Cahn's death in 1978. Civil Code articles 870, 871, 940, 941, 942, 1626, Baten v. Taylor, 386 So.2d 333, 340 (La.1979). The law in effect on that date, the earlier version of C.C. 543, controls this case absent some exception to the general rule prohibiting retrospective application of laws.
Civil Code article 8 states the general rule:
"A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
This principle has constitutional implications. Article 1, § 23 of the Louisiana Constitution provides:
"No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."
Planiol, in his treatise on the civil law, explains the principle in the following terms:
"... The reason which inspired the establishment of this principle is very simple. It is the necessary safeguard of individual interests. There would be no security for private persons, if their rights, their fortune, their personal status, the effects of their acts and of their contracts, could be questioned or modified or suppressed at any moment because the law-maker had changed his mind. The general interest, which is here but the aggregate of individual interests, therefore requires that what has been done regularly under the aegis of the law, be considered valid, and consequently, that it remain stable, even after a change in legislation." 1 Planiol, Treatise on the Civil Law, § 240 (La.State Law Institute Translation, 1959).
He goes on to recognize three exceptions to this general rule:
"... 1st, when the law-maker has expressly so declared; 2nd, when the law is interpretive; and 3rd, when it is a penal law which suppresses or lessens a penalty." 1 Planiol, supra, § 249.
In addition to these exceptions, laws will be applied retroactively where they are procedural, remedial or curative in nature. Tullier v. Tullier, 464 So.2d 278 (La.1985); Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953).
Applying these principles to this case, we conclude that the 1983 amendment to C.C. 543 must not be applied retroactively to property rights which were acquired upon Moise Cahn's death in 1978. This situation does not fall within one of the exceptions to the rule prohibiting retroactive application. C.C. 543, as amended, does not merely interpret an existing law or provide procedural rules. Instead, it changes the law and establishes a new rule which permits partition by licitation in situations in which it was theretofore prohibited. Since new substantive rights and duties are established, C.C. 8 and Art. 1, § 23, La. Const. prohibit giving C.C. 543 retroactive effect, absent a clear indication from the legislature that retroactive application was intended.[5]
The revised version of C.C. 543 and the accompanying comments contain no express indication regarding retroactivity. The official comments indicate that the amendment was intended to "change the law governing partition of property held in indivision ..."[6] Such language reinforces our conclusion that the amendment produced a substantive change in the law and that it was not merely interpretive.

APPLICATION OF CIVIL CODE ARTICLE 543
The question is now whether C.C. 543 prohibits a partition by licitation. In Pasternack *1182 v. Samuels, supra, we held that C.C. 543 prohibits partition by licitation by co-owners of an undivided interest in property subject to a usufruct.
Plaintiff attempts to distinguish Pasternack from the present case. In his brief plaintiff contends: "In Pasternack, unlike the case now before this Court, the usufructuary was both a usufructuary and an owner." This factual distinction was the basis of the court of appeal decision in which Pasternack was distinguished.
In accepting the distinction urged by plaintiff, the court of appeal reasoned that:
"... the parties' ownership interests in that case were different from those in the Cahn property. Joseph Pasternack, Jr.'s co-owner in indivision, Mrs. Samuels, from whom he sought partition, owned fractional interests in the property in full ownership in addition to interests in usufruct. Pasternack, 415 So.2d at 212 n. 1 and 213. Thus, Mrs. Samuels was precisely the person described in the second sentence of Article 543, `both a usufructuary and an owner.' In the present case, Dorothea Cahn is not both a usufructuary and an owner; her only interest in the property is a usufruct. There is no one who is both a usufructuary and a perfect owner of the Cahn property. Therefore, because of this critical factual distinction, we hold the rule in Pasternack inapplicable to the issue before us." Cahn v. Cahn, 459 So.2d 731, 733 (La.App.1984).
This "critical" distinction is not of significance under C.C. 543. The second sentence of the article unmistakably provides: "Partition by licitation is not allowed...." The language which follows this clear prohibition, "... even though there is a person who is both a usufructuary and an owner," does not lessen the effect of the prohibition or restrict its application to situations where the usufructuary is also an owner.
The court of appeal failed to recognize the import of our holding in Pasternack. In that case we found that the prohibition against partition was clear and without ambiguity. Pasternack v. Samuels, supra at 213. Where the words of a law are clear and free of ambiguity, the plain meaning of the law may not be ignored. C.C. 13.
Although the court of appeal found Pasternack distinguishable, it recognized, in its statement of the issue, that the sole issue in this case was identical with the issue raised in Pasternack.[7] According to the court of appeal:
"The sole issue we decide is whether one who holds an undivided fractional interest in property in full ownership has the right to seek partition by licitation even though there is a person who holds a usufruct over another undivided interest in the property." Cahn v. Cahn, supra at 732.
Since identical legal issues are raised in both cases, the resolution of those issues must be the same.
Civil Code article 543 prohibits plaintiff, the perfect owner of a one-quarter interest, from demanding a partition by licitation, since one-half of the property is burdened with a usufruct.

PLAINTIFF'S ALTERNATIVE CLAIMS
Finally, we consider plaintiff's alternative claims for rent, possession of the premises, or a declaration of his rights. The trial court rejected plaintiff's claim for declaratory relief, finding that plaintiff was merely seeking to circumvent the prohibition against partition by licitation. In its reasons for judgment, the trial court stated:
"If in fact [plaintiff] feels that there has been any impairment of his rights other than with respect to the partition by licitation then he is certainly free to seek legal redress at that time. However, to *1183 try to enumerate all these rights in advance given the present relationship between the parties will not deter any future litigation...."
Under C.C.P. 1876, the trial judge is afforded discretion to accept or reject requests for declaratory relief where such relief would not terminate the controversy. It is apparent that a declaration "of the rights and obligations of each of the parties" would not terminate the dispute, and would only fuel further litigation. Therefore, declaratory relief was properly denied.
Plaintiff's claims for rent and possession of the premises were also considered by the trial court. Although the trial court failed to address these claims specifically, it is evident from the court's reasons for judgment that it felt these claims were made solely to circumvent the prohibition against partition. For this reason, the trial court rejected these claims.
Plaintiff claims he is entitled to rent for Dorothea Cahn's use and enjoyment of his one-quarter interest in the property. He claims that under the theory of unjust enrichment, he is entitled to 25% of the fair rental value of the property from the date of Moise Cahn's death until defendant vacates the premises. According to plaintiff, this sum would represent the extent of his impoverishment and, conversely, the extent of Mrs. Cahn's enrichment.
Five prerequisites must be met in order to sustain a claim for unjust enrichment. The party urging application of this extraordinary remedy must show: (1) an enrichment; (2) an impoverishment; (3) a rational connection between the enrichment and the impoverishment; (4) a lack of "justification" or "cause" for the enrichment, thereby rendering it unjust; (5) the absence of another legal remedy. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La.1974).
Applying these principles to the present case, we conclude that plaintiff does not state a cause of action to recover rent under the theory of unjust enrichment. Dorothea Cahn has not been enriched by her use of the home at 40 Versailles Boulevard. Her one-half usufructuary interest exists over every part of the property and it entitles her to the use and enjoyment of the premises. Furthermore, to the extent that Mrs. Cahn has benefited from her use of the premises, this benefit was legally conferred upon her when Moise Cahn died. Her usufructuary interest is protected and it may not be encroached upon. C.C. 566, 603, 605. Since there is a legal justification for Mrs. Cahn's usufruct, no cause of action for unjust enrichment lies against her.
Dorothea Cahn and Robert Cahn are co-owners of the property. We have held that a co-owner has the right to occupy premises without the obligation of paying rent to other co-owners for occupancy of their undivided interests. Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955); Stewart v. Crump, 131 La. 463, 59 So. 903 (1912). This principle has typically been applied to co-owners of full ownership interests. Likewise, it applies to co-owners of separate elements of perfect ownership, such as the usus and the fructus. Therefore, Dorothea Cahn is entitled to remain in the premises without being obliged to compensate Robert Cahn for the use of his undivided interest.
In his second amended petition, plaintiff prays for possession of the premises by virtue of his undivided ownership interest. In order to effectuate this claim, he demands that Dorothea Cahn be ordered to vacate the premises.
This prayer for relief has no basis under the law because plaintiff seeks exclusive possession and use of the premises.[8] Plaintiff asks us to order Dorothea Cahn to vacate the premises. He has no basis for making such a claim. Dorothea Cahn legally acquired the rights of use and *1184 enjoyment of an undivided one-half interest in the property. Plaintiff is not entitled to divest her of those rights merely because he holds a one-quarter share in full ownership.

DECREE
For the foregoing reasons, we affirm the trial court's rejection of plaintiff's alternative claims. Defendant's exception of no cause of action is sustained. The judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. All costs of these proceedings are assessed against plaintiff.
CALOGERO, J., dissents and assigns reasons.
LEMMON, J., dissents.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion because it is incorrect, in my view, and it ignores long abiding principles of our civil law.
It is well settled that property may be held in indivision, that is, it may be owned jointly by more than one person, with no single person owning any particular part of the property, rather, each owning an interest in the whole. As early recognized by this Court, co-owners of land "are owners par mi et par tout, of part and of the whole. Neither of two co-owners has the exclusive right to any determinative part of the common property." Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277 (1919). And with certain exceptions not pertinent here, each owner has the right to oppose the use of the property by the other. This principle was grounded in Roman law and held in French law, as observed by our Court in Gulf Refining Co., supra, and recently reiterated in Steele v. Denning, 456 So.2d 992 (La.1984). Consequently, when co-owners cannot agree upon the use of their property, partition is the relief provided by the Civil Code. In that regard, La.C.C. art. 1289 provides:
No one can be compelled to hold property with another, unless the contrary has been agreed upon; any one has a right to demand the division of a thing held in common, by the action of partition.
In the instant case, plaintiff is the perfect owner of an undivided one-fourth interest in the Versailles Boulevard property and the naked owner of an undivided one-fourth interest in the property. Plaintiff's sister holds like interests in the same proportions in the property. Plaintiff's step-mother, Mrs. Dorothea Cahn, has a usufructuary interest on an undivided one-half interest in the property (bequeathed to her by her late husband, plaintiff's father). Dorothea Cahn presently resides alone in the house located there.
Plaintiff has brought suit to have the property partitioned by licitation, or, in the alternative, to have his rights delineated. He is given no relief by the erroneous majority decision rendered today.
The question of whether or not plaintiff can have the property partitioned by licitation turns on the finding of whether he holds a thing in common with the other co-owners. As a perfect owner, he of course does hold a thing in common with all other owners, for perfect ownership is the equivalent of a usufruct and naked ownership being held by the same person. Thus, plaintiff as a perfect owner holds in common with Dorothea Cahn, who holds a usufructuary interest, and with his sister who holds in perfect ownership and as a naked owner. Holding in common with all other co-owners entitled plaintiff, under La.C.C. 1289, to have the entirety of the property partitioned by licitation.
The majority relies on La.C.C. art. 543, prior to its amendment in 1983, and this Court's erroneous interpretation of that article in Pasternack v. Samuels, 415 So.2d 211 (La.1982) (Calogero and Lemmon, JJ., dissenting, Calogero, Dennis and Lemmon, JJ. voting to grant rehearing) to deny plaintiff his longstanding right to have the property partitioned.
La.C.C. art. 543 was enacted in 1976 to "restate a rule established by Louisiana *1185 jurisprudence and does not change the law. Smith v. Nelson, 121 La. 170, 46 So. 200 (1908); Succession of Glancey, 112 La. 430, 36 So. 483 (1904); Fricke v. Stafford, 159 So.2d 52 (La.App. 1st Cir.1963)." La. C.C. art. 543, Comments. In reviewing these three cases, from which La.C.C. art. 543 was derived, it is clear that the concern of the redactors in enacting the provision was to prohibit partition by licitation of property subject to a usufruct only where the party seeking the partition does not hold rights of the same nature in the same object, common elements, with all others who hold an interest in the property. Thus, for example, La.C.C. art. 543 was enacted to prevent a usufructuary or naked owner from affecting the rights of the other by partition, or from either affecting the rights of a perfect owner by partition, since in all these cases the usufructuary or naked owner does not hold elements in common with each other, nor do they hold in common with a perfect owner.
However, the converse is not true. A perfect owner, who essentially owns both a usufructuary interest and a naked ownership interest, does hold elements in common with other usufructuaries, other naked owners and other perfect owners. Thus, he holds elements in common with all other co-owners and accordingly cannot be "compelled to hold property with another." La. C.C. art. 1289. Pasternack was incorrectly decided by this Court insofar as it held that a perfect owner had no right to sue for a partition by licitation of property which was burdened by a usufruct. It should be overruled today rather than followed.
This Court's error is further being compounded by the opinion rendered herein, in that not only does it refuse to recognize its past error but it also further refuses to apply the Legislative revision to La.C.C. art. 543 which attempted to correct this Court's erroneous ruling in Pasternack.
La.C.C. art. 543 was amended in 1983 to more clearly reflect the civilian principles that abided for over 70 years, until this Court's decision in Pasternack. It provides:
When property is held in indivision, a person having a share in full ownership may demand partition of the property in kind or by licitation, even though there may be other shares in naked ownership and usufruct.
A person having a share in naked ownership only or in usufruct only does not have this right, unless a naked owner of an undivided share and a usufructuary of that share jointly demand partition in kind or by licitation, in which event their combined shares shall be deemed to constitute a share in full ownership.
The provision clearly sets out the long settled civilian principle that only a person who holds common elements with all other co-owners may have the property partitioned. These principles were applicable when Dorothea Cahn obtained her usufructuary interest in 1978 and are applicable today. Yet the majority refuses to apply them, finding that to do so would be giving retroactive application to a provision which will take away substantive rights.
As stated, Dorothea Cahn never had any rights different from those reflected in the revised provision. Furthermore, however, the article as revised does not affect Dorothea Cahn's substantive rights. The provision is procedural, dealing only with the means of having property partitioned. Dorothea Cahn's substantive right is the right to a usufruct over a one-half interest in the property. That right is not being affected and the usufruct will continue to exist over one-half the proceeds obtained from the sale of the property. Her substantive property right would not be affected by the application of this provision to the facts of this case. This has been the holding on the similar question involving La.R.S. 9:2801, which created new and different procedures to be followed in the partition of community property. Hall v. Hall, 460 So.2d 1053 (La.App. 2d Cir.1984); Hinton v. Hinton, 452 So.2d 417 (La.App. 3d Cir. 1984); Simon v. Simon, 421 So.2d 931 (La.App. 4th Cir.1982), writs denied, 423 So.2d 1181 (La.1982).
*1186 The full import of this opinion insofar as it denies any semblance of respect for plaintiff's property rights, is made evident by the following holdings on plaintiff's alternative claims:
(1) The majority holds that plaintiff is not entitled to a declaration of his rights because it "would only fuel further litigation;"
(2) The majority holds that plaintiff cannot get rent for Dorothea Cahn's use and enjoyment of his undivided one-fourth interest in the house, to which she has no rights whatsoever, because he is just trying to circumvent the prohibition against the partition by licitation;
(3) The majority holds that plaintiff cannot get a judgment entitling him to possession of the property because he asked to have Dorothea Cahn vacate the premises and he is just trying to circumvent the prohibition against the partition by licitation; and finally,
(4) The majority holds that plaintiff is not entitled to damages for unjust enrichment from Dorothea Cahn because she is not being enriched and because she has legal right to the use and enjoyment of the premises, notwithstanding that she is in possession of and using the entirety of the property, half of which she has no legal entitlement to at all as a usufructuary or otherwise, it belonging completely to plaintiff and his sister.
In summary, what the majority in effect is doing by their decision today is "bequeathing" to Dorothea Cahn, by Court judgment, that which her husband was unable to leave to her in his will. And plaintiff, who has appropriately sought redress by the courts, after almost three years of litigation, is left with the alternative of self-help, that is, without a court judgment concerning his rights, to simply show up on the doorstep with his moving van and move himself (and presumably, family and friends if he chooses) into the house. And if he does choose to do this to Dorothea Cahn, she will be left with absolutely no redress whatsoever, for it is unquestionable that as a usufructuary she has no right to sue for a partition by licitation against a perfect owner, and according to the majority opinion, she has no right to exclusive possession since plaintiff has "legally acquired the right of use and enjoyment of an undivided [one-fourth] interest in the property."
Thus, rather than allowing the partition now, and giving Mrs. Cahn one-half of the proceeds to use for the remainder of her life (to buy a home to live in if she chooses) the majority is leaving her with what could end up being a most unfortunate outcome, that is, the possibility that an obviously antagonistic co-owner could move into the house with her. And at that time, because of the majority opinion rendered today, she will have no legal right of redress except to move out of the house and thereby lose the value of her usufruct completely.
NOTES
[1] Two certain lots or portions of ground, together with all the buildings and improvements thereon and the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Sixth District of this City, within that tract of land formerly designated as the Tulane Tract, in the Square bounded by Versailles Boulevard, Fontainebleau Drive, Audubon Boulevard and Claiborne Avenue, which said lots are designated by the Nos. 18 and 20 on a plan or certificate of survey by F.H. Waddill, Civil Engineer, dated March 19th, 1925, a blueprint whereof is annexed to an act before W.W. Young, Notary Public, dated November 10, 1924 (a blueprint whereof is likewise annexed to an act before P.D. Olivier, Notary Public, dated August 10, 1925), and according to which plan the said lots adjoin and measure as follows:

Lot 18 measures Thirty (30) feet, One (1) inch front on Versailles Boulevard, Thirty (30) feet, No (0) inches, Three (3) lines wide in the rear, by a depth on the side line nearer Fontainebleau Drive, dividing it from Lot 16 of One Hundred and Twenty-seven (127) feet, Nine (9) inches, One (1) line and a depth on the line of Lot 20 of One Hundred and Twenty-eight (128) feet, Eight (8) inches, Two (2) lines. Lot 20 measures Thirty (30) feet, No (0) inches, Seven (7) lines front on Versailles Boulevard, Thirty (30) feet, No (0) inches, Two (2) lines wide in the rear, by a depth of One Hundred Twenty-eight (128) feet, Eight (8) inches, Two (2) lines of Lot 18, and a depth on the line dividing it from Lot 22, of One Hundred Twenty-nine feet, Seven (7) inches, Three (3) lines.
[2] Official Comment (b) to C.C. 543:

"(b) The second sentence of this article excludes partition of the entire property by licitation even though there is a person who is both a usufructuary and a naked owner. It restates a rule established by Louisiana jurisprudence and does not change the law. Smith v. Nelson, 121 La. 170, 46 So. 200 (1908); Succession of Glancey, 112 La. 430, 36 So. 483 (1904); Fricke v. Stafford, 159 So.2d 52 (La.App. 1st Cir.1963)."
[3] Acts 1983, No. 535, § 1.
[4] Official Comments to the 1983 Revision of Civil Code article 543, Comment (a).
[5] The legislature is free to give its enactments retroactive effect so long as vested rights are not disturbed. We find it unnecessary to decide whether the rights in this case were vested, since we conclude that the legislature did not intend for the revision of C.C. 543 to be applied retroactively.
[6] Official Comments to the 1983 revision of C.C. 543, Comment (a).
[7] In Pasternack v. Samuels, supra at 213, we framed the issue as follows:

"The sole issue presented for our determination is whether the owner of an undivided interest in full ownership of property subject to an outstanding usufruct may demand partition by licitation."
[8] Plaintiff does not seek joint possession of the premises with Dorothea Cahn. Instead he seeks sole possession of the premises, to the exclusion of Dorothea Cahn.